# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| EVANS LAW CORPORATION, APLC | * | |
| and ROBERT B. EVANS, III | * | |
| | * | |
| VERSUS | * | NO. 16-13550 |
| | * | |
| CESAR BURGOS, BURGOS & ASSOCIATES, | * | |
| THE BURGOS LAW CORPORATION, APLC, | * | |
| GEORGE McGREGOR and ROBERT DAIGRE | * | |

**************************************************************************

## PLAINTIFFS' FOURTH AMENDED COMPLAINT

1. This is an extraordinary case in which a lawyer attempted to murder his law partner to obtain the benefits of a life insurance policy and inherit their successful firm. When Burgos' attempt failed, he then resorted to further RICO violations to seize their law firm, Burgos & Evans. Ultimately, Burgos ousted Evans, his long-time partner, from the firm and took his clients by falsely telling them Evans was a drug addict and incapable of practicing law. Evans has been damaged by this three-year scheme by millions of dollars.

## I. PARTIES, JURISDICTION & VENUE

2. Plaintiff Evans Law Corp., APLC ("Evans Law"), is a Louisiana corporation conducting business in this district;

3. Plaintiff Robert B. Evans, III, is a citizen of Louisiana;

4. Defendant Cesar R. Burgos, ("Burgos"), is a citizen of Louisiana;

5. Defendant Burgos & Associates, LLC, is a Louisiana corporation conducting business in this district;

6. Defendant the Burgos Law Corporation, is a Louisiana corporation conducting business in this district;

7. Defendant George McGregor ("McGregor"), is a citizen of Louisiana;

8. Defendant Robert Daigre ("Daigre"), is a citizen of Louisiana;

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331, as a federal question, and pursuant to 18 USC §1964(c), RICO's civil damages provision.

10. Venue is proper pursuant to 18 U.S.C. §1965(a) as the wrongful actions in the Eastern District of Louisiana.

## II. FACTS COMMON TO ALL COUNTS

11. Greed and jealousy are at the heart of this case. Over the years, Burgos grew resentful of Evans tremendous success in the courtroom, which eclipsed his own. And his income from the Burgos & Evans law firm, which they had co-owned since June 1999, was not enough to support his lavish lifestyle and failing real estate business, which relies upon illegal alien labor.

12. The firm was extremely successful and had a staff of about twenty. Burgos and Evans had each earned in excess of $350,000 in 2014. Evans' compensation was paid through Evans Law Corp, which is named as a Plaintiff.

13. 2015 promised to be a record breaking year for the firm, primarily because of the anticipated settlement of one of the largest cases it had ever litigated, *Board of Supervisors of Louisiana State University and Agricultural and Mechanical college v. Dixie Brewing Co*. ("Dixie Brewing").

14. In public, Burgos was a supportive and loyal partner to Evans. He told him "It is a blessing to have a thriving business. You are a great lawyer, close friend and confidant." But this was a façade. Burgos had been trying to eliminate Evans from the firm for years.

### a. Conspiracy to Murder Evans in 2012

15.  In 2012, Burgos formed a scheme to cause Evans' death by heavy doses/ combination of hormonal drugs he knew would likely cause him to have a heart attack.

16.  In January 2012, Burgos took Evans to a doctor of Burgos' choice in Baton Rouge whom Burgos and knew well and specialized in prescribing high doses of testosterone. Burgos did this in order to get the doctor to prescribe an ongoing regimen of injections for the ostensible purpose of boosting Evans' energy level.

17.  In order to induce him to begin the regimen, Burgos falsely told Evans that he was taking the testosterone injections and they made him a better lawyer. Evans was skeptical, and told the doctor he had a heart valve condition, Yet the doctor prescribed daily growth hormone injections, a drug called Sermorelin, and weekly testosterone injections.

18.  These drugs have been found by the Food and Drug Administration to increase the chances of heart attacks. *See* https://www.fda.gov/Drugs/DrugSafety/ucm436259.htm. They are contra-indicated for anyone with a heart condition.

19.  Burgos knew Evans had an aorta valve defect. He was hoping the drugs would cause Evans to have a fatal heart attack, which nearly happened. Sermorelin is a strong human growth hormone used to and increase hormone deficiency. Its off-label use may include adult age related growth hormone insufficiency. The Food and Drug Administration does not regulate its prescription use, so it is up to the discretion of the practitioner/doctor on how to use it. Consequently, doctors are readily willing and cooperative in prescribing this growth hormone to patients without a concern for side effects for patients with heart issues. *See* https://www.fda.gov/Drugs/DrugSafety/ucm436259.htm

20.   This was nothing short of a conspiracy to cause Evans' death.  This violated La. Stat. Ann. §14:26, conspiracy to commit Second Degree Murder (La. Stat. Ann. §14:30.1).    This is a form of racketeering activity pursuant to 18 U.S.C. §1961(1)(A).

21.   Burgos was motivated by his hatred, greed and jealous for Evans, which he expressed to others, and the prospect of obtaining the million dollar death benefit in Evans' life insurance policy of which he was named the sole beneficiary.  (This was required by the law firm Operating Agreement.)  And upon his death, the Operating Agreement would then enable Burgos to buy Evans' share of the firm for that sum rather than its market value which was several times that.

22.   Evans took the medications from February through September 2012, at which point he had a panic attack, shortness of breath, chest pain, symptoms of severe strain on the heart.

23.   Evans' cardiologist determined the panic attack was caused by the testosterone and HGH injections.  He ordered them stopped.  Evans' heart has been fine ever since.

### b. The Scheme to Deprive Evans of His share of the Dixie Brewing Settlement and Oust him from the Firm Begins in 2013 and Culminates in 2015

24.   Burgos & Evans had been engaged in the Dixie Brewing case since 2010.  By 2013, settlement discussions were underway, and with the attempt to kill him having failed Burgos began his next scheme to oust Evans from the firm and deprive him of his share of the settlement.  This entailed ongoing uses of the federal mail and wires to spread damaging misinformation about Evans to lay the foundation for his removal from the firm for mental unfitness and alleged drug addiction, which at all times is denied.

25.   Accordingly, when Evans went to a pain treatment clinic in Nevada in January 2013 because he was suffering from sciatica and back pain, Burgos agreed to make the arrangements with the clinic and the firm.  But he secretly told the clinic staff, outside the

presence of Evans, in a phone call that Evans was a drug addict, not that he needed back pain management.  He wanted this defamatory information in the clinic's files for possible use at a later time in order to undermine Evans' abilities as a lawyer.

26.     This was an untrue interstate; call, and a violation of the wire fraud statute, 18 U.S.C. §1343.  It was made to harm Evans in his business relations.

27.     Pursuant to the scheme, Burgos also lied by telling firm employees that Evans was addicted to pain medication.

28.     On the morning of May 1, 2015, Evans appeared in Court to take steps to remove funds from the court related to the multi-million-dollar confidential settlement of the *Dixie Brewing* case.  When Evans returned to the law firm he dropped of the *Dixie* file and told Burgos he was going to lunch and would return shortly.  Upon Evans' return to the law firm, a building he co-owned, the locks and card keys had been changed, his building pass had been deactivated, and he could not enter.  Further, his computer password was changed, locking him out of his firm's server, computer files and client data.

29.     Burgos hired George McGregor in October 2014 to assist in the execution of the conspiracy.  Shortly before May 1, 2015, Burgos explained to the law firm employees that Evans was removed from the firm because he was allegedly a "drug addict", "was no longer practicing law", "was away receiving medical treatment", and had "disappeared."   All of these statements were known by Burgos and McGregor to be completely false.

30.     On or about May 10, 2015, Burgos and McGregor executed the next part of their conspiracy to send emails and letters through the U.S. Postal system to almost all 600 firm clients informing them that Evans had either stopped practicing or was unable to practice law and had chosen to leave the firm.

31.     The clients were asked to reply if they wanted the firm to continue to represent them in their pending cases.  Many of these emails and letters were sent to clients in Texas, Mississippi, and Pennsylvania.  All but a few of the firm clients responded in the affirmative.  Based on what had been communicated to them, they wanted Burgos and his associates to handle their cases.  Needless to say, the wording of the emails depicted Evans in a very negative light, as unfit to represent his own clients.

32.     These hundreds of emails and letters were made to injure Evans in his business interests- to take away clients in which he had an interest.  These fraudulent communications were made in violation of the federal mail and wire fraud statutes, 18 U.S.C. §§1341 and 1343, which prohibit the use of the U.S. Mail and federal wires to further "schemes to defraud."

33.     As indicated, the scheme to expel Evans was successful.  Evans was never able to return to his law firm, and the vast majority of the firm clients, after being misled by the letters and emails, continued to be represented by Burgos firm, now a new entity named Burgos & Assoc., to take over their cases.

34.     Additionally, Burgos directed Daigre, who had also joined the conspiracy in the fall of 2014, to hack into Evans' computer and respond to emails from anybody and everybody, including clients found in Evans inbox.  This hacking of Evans' emails began on or about May 1, 2015.  Daigre, impersonating Evans, did respond to emails directed to Evans, falsely informing those people who emailed Evans that he either stopped practicing or was unable to practice law and had chosen to leave the firm.  Some of these emails were sent to out of state clients.  Relying on this false information, these clients contacted Burgos and signed new retainer agreements with Burgos & Assoc.  These emails similarly violated the mail and wire fraud statutes and harmed the Plaintiffs.  Neither Burgos, McGregor nor

Daigre ever provided Evans with copies of the illegally hacked emails, (either emails received into Evans inbox and/or those sent out from Evans outbox), though Evans can prove that Daigre was hacking his emails.

### c. The Scheme to Violate the Settlement Agreement

35. Burgos and Evans sued each other in Louisiana state court.  In June of 2015, the state district judge directed Burgos as follows: "since Burgos maintained all clients' contact information to the exclusion of Evans" Burgos and Evans were to send a jointly signed letter to their clients which would have indicated the two lawyers had split the practice, provided both their contact information, and allowed the clients to freely choose which lawyer they wanted to take over their cases.  Thereafter, on or about July 8, 2015, Burgos and Evans purportedly reached a settlement whereby Burgos agreed to send a second letter to clients indicating that the lawyer's had split the practice and have provided their new contact information and simply stated that the two lawyers had chosen to go in different directions.

36. However, Burgos refused to send the first letter directed by the judge and the second letter required by the settlement agreement.  And he continued to send more emails and letters to clients making the same false statements about Evans in violation of the mail and wire fraud statutes.  These letters and emails were sent approximately in May of 2015 through December of 2015, to over 500 clients.  All of these letters and emails were false, fraudulent and made with the intent to harm Plaintiffs.

37. The letters, did in fact, harmed Evans.  Relying upon the information in the phone calls, emails and letters, all of the firm's clients signed new retainer agreements with Burgos & Assoc., with the exception of approximately fifteen clients.  In fact, whatever Burgos,

McGregor and Daigre told Evans own clients caused some clients to refuse to even communicate with Evans.

38.  The Settlement Agreement also provided that Evans would be paid $900,000, excluding the Dixie fee, as his share of fees for cases which the firm had as of May 1, 2015.  The Settlement Agreement provided Burgos with a payment plan to pay Evans over time.  Despite that, Evans Law has only been paid $100,000 of what Burgos owes.  Burgos has violated the settlement agreement in these material respects, and in fact, Burgos has not complied with a single obligation of his under the Settlement Agreement.

### d. The Scheme to Cover Up Burgos' Malpractice and Blame Evans

39.  In approximately 2013 or 2014, Evans was hired to represent Mary Washington in a Medical Malpractice case.  However, after Burgos hired McGregor in 2014 Burgos asked McGregor to assist Evans in said case.  In February of 2015, Evans flew to Houston Texas to take the trial deposition of Mary Washington.

40.  However, the defendants had taken a writ on the issue of personal jurisdiction in Louisiana.  McGregor was assigned the task of drafting an opposition brief challenging the defendants' writ application.  Burgos and McGregor failed to file any opposition brief challenging the defendant's writ "containing many misstatements" resulting in the dismissal of that defendant.  Rather than tell the client the truth, they caused a letter to be sent to Mary Washington, in Texas, alleging that the failure to file a writ opposition was Evans fault opposed to being Burgos and McGregor's fault.  This action violation of the mail fraud statute in that it was sent in furtherance of the scheme to harm Evans.

**COUNT I - RICO**
**Violations of 18 U.S.C. § 1962(d) Against Burgos, McGregor, and Daigre**

41.     The schemes are related in that they were undertaken by Burgos and his later joining co-conspirators in order to eliminate Evans from the law firm, take his clients, and deprive him of his 50% share of revenues from his cases in the event the firm dissolved.

42.     Moreover, the schemes involve racketeering acts which occurred over more than a three-year period.  They form a "pattern" of racketeering required by 18 U.S.C. §1961(5).

43.     Burgos & Evans and Burgos & Assoc. are law firm's professional corporations, thus RICO enterprises pursuant to 18 U.S.C. §1961(4).   All the RICO violations were committed through one or both of these enterprises.

44.     Burgos, McGregor and Daigre are RICO persons pursuant to §1961(3).  They conspired to commit at least two RICO violations.  Burgos, as alleged conspired to commit all of them.  McGregor and Daigre joined the conspiracy to harm Evans in October of 2014 and carried it out for its duration as detailed.

45.     They all have conspired to violate 18 U.S.C. §1962(c) by agreeing to the commission of a pattern of racketeering activity through the enterprise.  Thus, each has violated 18 U.S.C. §1962(d).  They are jointly and severally liable for all damages to Evans and Evans Law Corp.

46.     Evans and Evans Law Corp have been harmed by losing millions of dollars in income as a result of some or all of these RICO violations.

47.     Accordingly, Plaintiffs Evans and Evans Law demand judgment be entered against the three Defendants, Burgos, McGregor and Daigre, pursuant to 18 U.S.C. §1964(c) for Plaintiffs damages, plus three times their damages, plus attorney's fees and costs and pre-

judgment interest.  Plaintiffs also ask for an injunction prohibiting any further racketeering activity.

## COUNT II
**Violations of Louisiana's Unfair Trade Practices Act Against all Defendants**

48.    Plaintiffs re-incorporate Paragraphs 1-40.

49.    Further, the following acts and practices, which have all occurred while in the course of conduct of trade and commerce, all constitute illegal, unethical, immoral, unfair, and deceptive acts and/or practices and thus have caused and continue to cause Evans significant damage and an ascertainable loss of money:

(i)    systematically targeting Evans, and any other affiliate thereof for conspiring to eliminate and eliminating Evans, illegitimate discrimination, illegal exclusions without justification and with the intent to cause economic damage and destruction;

(ii)    lying that Evans has issues which affect his ability to practice law;

(iii)    pressuring, coercing and inducing existing and potential clients to not hire Evans;

(iv)    establishing a conspiracy and scheme against Evans with the intent to damage and economically destroy Evans by preventing Evans and its partners from engaging in lawful commerce;

(iv)    discouraging existing and potential clients from hiring Evans and from engaging in lawful commerce with Evans and intentionally interfering business relations between Evans;

(v)    preventing Evans from gathering his trade secrets, work product, forms, materials, strategies and client lists created over 20 years, and from engaging in lawful commerce;

(vi)    from May 1, 2015 through July 8, 2015, hacking Evans' emails from clients and potential clients for the purpose of harming Evans;

(vi)    from May 1, 2015 through July 8, 2015, after hacking Evans' email, responding to emails with various stories as to why Evans is not replying to his own emails;

(vii)    committing wire fraud by lying to clients about Evans in various ways and to solicit Evans' clients;

(ix)    committing mail fraud by sending out letters to clients inconsistent with the Court's directive and only giving clients a chance to hire Burgos & Associates;

(x)    wrongfully converting Evans' work product and forms and strategies, and client lists and pleadings ono various matters collected over 20 years and now using it as their own; and

(xi)    lying to clients, existing and potential to prevent Evans from signing up clients.

50.    Upon information and belief, the aforementioned acts and practices exist and continue presently whereby Burgos, McGregor and Daigre continue to lie to existing and potential clients to present them from hiring Evans, and Burgos, McGregor and Daigre still use Evans' forms and works product and pleadings gathered over 20 years.

51.    In claims for a conspiracy and subsequent wrongful conduct resulting in damages, all parties to the conspiracy are liable to the plaintiffs for damages jointly, severely and in solido.  Consequently, the co-conspirators' acts of facilitating the exclusion of Evans by the conduct after May 1, 2015 and through October of 2015, and then the continued use of Evans' work product as their own, the plaintiffs have been damaged, pursuant to the illegal conspiracy all constitutes additional illegal and multiple unethical and immoral acts of the defendants.

52.    Accordingly, Plaintiffs Evans and Evans Law demand judgment be entered against the three Defendants, Burgos, McGregor and Daigre, pursuant to La. R.S. 51:1401 for

Plaintiffs damages, plus three times their damages, plus attorney's fees and costs and pre-judgment interest.   Plaintiffs also ask for an injunction prohibiting any further racketeering activity.

## COUNT III
### Wrongful Conversion of Proprietary Information Against all Defendants

53.    Plaintiffs re-incorporate all allegations in the preceding paragraphs 1-40 as if fully set forth herein:

54.    On May 1, 2015, Evans went into the Law Firm office at 3535 Canal Street, also owned equally by Burgos and Evans 50/50.  In the morning of May 1, 2015, Evans drafted a Motion to Withdraw Funds from the Registry of the Court. After drafting the Motion, Evans drove to Civil District Court, filed the Motion, clocked it in, paid the costs due, then walked it through to the Judge to have it signed.

55.    In furtherance of his overall conspiracy to eliminate Evans from the firm, Burgos disconnected Evans from the firm's servers on May 1, 2015, and changed the locks, disabling Evans from practicing law by improperly changing Evans passwords causing Evans to be unable to access client documents, case documents and other client data; likewise, Burgos disabled Evans access card key to the office building.  Hence, Burgos, with ill motive and ill intent, took possession of the building owned by Evans but took it to the exclusion of Evans and further took complete possession of all law firms property, furniture, fixtures, computers, equipment, software which was owned by Evans but took it to the exclusion of Evans all constituting acts of wrongful conversion violations law in the State of Louisiana.

56.    As described throughout this complaint, Burgos acted with ill will and utterly outrageous conduct to eliminate Evans. Burgos, did in fact, wrongfully convert Evan's property,

including but not limited to, clients, client files, personal and work related emails, his calendar, the building, the furniture, office equipment, fixtures and awards and which continues until today.

57.    Further, an integral component of Evans' success is his reputation and strategies that he employed in various types of cases, for which he created thousands of forms over 20 years of practice. Burgos wrongfully converted all of Evans' work product, pleadings and strategies for various types of litigations and Burgos continues to use Evans' work product as his own to the exclusion of Evans.

58.    Likewise, another key to Evans' success was his communication with clients by telephone and email.  Even though Burgos locked Evans out of Burgos & Evans law firm on May 1, 2015, this did not end Evans' obligations to clients.   However, having wrongfully converted all of Evans' clients' contact information, such as phone numbers, emails and addresses, Evans had no way of communicating with his clients.  Burgos, McGregor and Daigre wrongfully, unilaterally used Evans' client database to solicit Evans' clients, without giving Evans the same opportunity.

59.    To be clear, to this day, Burgos, McGregor and Daigre have never given Evans his client list with Evans' clients' contact information.  Pursuant to La. Civ. Code Art. 2315, et seq., the acts and practices in the succeeding paragraphs by Burgos, McGregor and Daigre constitute civil conversion of Evans and The Evans Law Corporation, while Burgos uses it as his own to the exclusion of the Plaintiffs.

60.    As a result of the illegal conversion, Plaintiffs suffered damages in an amount that will be proven at trial.  Accordingly, Evans demands damages in an amount reasonable in the premises based upon those damages proven at trial.

**COUNT IV**
**Wrongful Conspiracy under La. Civ. Code Art. 2315, 2324 Against all Defendants**

61.     Plaintiffs re-incorporate all allegations in the preceding paragraphs 1 through 40 as if fully set forth herein:

62.     Burgos, McGregor and Daigre had wrongfully converted the proprietary information, work product, strategies, and forms for various types of litigation of Evans, and said acts constitute wrongful conversion under La. Civ. Code Art. 2315, et seq., and 2324.

63.     From June and July of 2015 through the present, Burgos, McGregor and Daigre have conspired to use continuously as their own, to the exclusion of Evans, Evans' own forms, strategies, client lists, pleadings, standard operation procedures and work product. All of the aforementioned acts demonstrate acts of wrongful conversion with ill will, ill motive and spite causing the plaintiffs' damages.

64.     Upon information and belief, Burgos, McGregor and Daigre have stolen, wrongfully converted and misappropriated the Plaintiffs physical property.  All of the facts alleged in the above paragraphs demonstrate a wrongful conspiracy to illegally convert Evans' tangible and physical property to use freely as his own property.

65.     As set forth in paragraphs 1-40, it is clear that Burgos, McGregor and Daigre were acting pursuant to a explicit plan and conspiracy to eliminate Evans and convert Evans' property from Evans to their own.  Pursuant to La. Civ. Code Art. 2324, et seq., all of the allegations stated in the above paragraphs, all alleged statements, claims and allegations set forth a civil conspiracy, with malice and ill-will towards Evans, set forth among the defendants to wrongfully and illegally exclude Evans from his own Law Firm as well as deprive him of his tangible physical property.

66.   As a result of the conspiracy outlined in detail above in numerous paragraphs to exclude plaintiffs, and the defendants wrongful acts in furtherance of conspiracy by rejecting the plaintiffs and wrongfully converting his office building, wrongfully converting all of his work products and client lists and strategies and forms created over 20 years, the plaintiffs have suffered damages such as loss of new clients, loss of reputation, loss of goodwill, loss of revenue and loss of profits since the dates of the original wrongful acts and the continued acts being performed today by the defendants to hurt, damage and destroy Evans.

Accordingly, Plaintiffs demand damages reasonable in the premises as a result of the defendant's wrongful conspiracy and wrongful conversion of Evans' tangible property.

**COUNT V**
**Evans' Defamation and Disparagement Claim Against all Defendants**

67.   Plaintiff Evans, re-incorporates all allegations in the preceding paragraphs as if fully set forth herein.

68.   At all times relevant hereto, Burgos, McGregor and Daigre knowingly made untruthful statements out of ill will, ill motive and spite by lying and publishing to third parties' various lies about Evans health, well-being, capacity to practice law, his good name and the good will of Evans.

69.   Burgos, McGregor and Daigre knowingly made false statements about Evans and were made public for the sole purpose of creating a negative image of Evans among potential clients, existing clients and his peers, all causing damage to Evans.

70.   Accordingly, Plaintiff Evans demands damages reasonable in the premise as a result of all the defamation of Evans by all the defendants.

## COUNT VI
**Evans Law Corporation's Claim Defamation and Disparagement Against all Defendants**

71. Plaintiff Evans Law, re-incorporates all allegations in the preceding paragraphs as if fully set forth herein.

72. At all times relevant hereto, Burgos, McGregor and Daigre knowingly made untruthful statements out of ill will, ill motive and spite by lying and publishing to third parties' various lies about Evans health, well-being, capacity to practice law, his good name and the good will of Evans.

73. Burgos, McGregor and Daigre knowingly made false statements about Evans and were made public for the sole purpose of creating a negative image of Evans among potential clients, existing clients and his peers, all causing damage to Evans.

74. Accordingly, Plaintiff, Evans Law, demands damages reasonable in the premise as a result of all the defamation of Evans Law by all the defendants.

## COUNT VII
**Tortious Interference and Business Relations Against all Defendants**

75. Plaintiffs renew and reiterate all of the allegations in the preceding paragraphs 1-40 as if fully set forth herein:

76. The various aforementioned acts and practices by Burgos, McGregor and Daigre have tortuously interfered and continue to tortuously interfere with lawful business relations between Evans and his clients.

   (i)    Burgos, McGregor and Daigre have lied to multiple third parties, clients, potential clients, judges, and lawyers alike, as well as the general public, claiming that Evans has multiple problems interfering with his ability to practice law, even though they acknowledge that Evans is a superior lawyer than most;

(ii)    Burgos, McGregor and Daigre published this information, knowing it to be false, to the general public and clients to convince existing clients and potential clients not to do business with Evans;

(iii)    At all time material hereto, Burgos, McGregor and Daigre knew the information was false and published it to others with ill motive or ill intent; and

(iv)    Burgos, McGregor and Daigre were successful in their lies persuading many existing clients and potential clients not to do business with Evans resulting in damages to the plaintiffs.

77.    At all material times hereto, Burgos owed a fiduciary duty to Evans regarding contracts that existed between clients and the firm, Burgos & Evans, LLC.

78.    Evans and Evans law possessed interest in every contract with every client that the firm had on May 1, 2015.   Accordingly, Burgos, McGregor, Daigre purposefully and maliciously interfered with Evans' contracts with his clients constitutes tortious interference with business relations.

79.    Accordingly, Plaintiffs, demand damages reasonable in the premises as a result of all the defendants' tortious interference with business relations.

## COUNT VIII

### Evans' Legal Malpractice Against Burgos

80.    Plaintiffs re-incorporate all allegations in the preceding paragraphs as if fully set forth herein:

81.    Burgos was Evans' lawyer regarding a serious car accident after which Evans had a lumbar fusion and suffered depression.  Burgos mediated the case in October of 2014, just before he planned his attack on the plaintiffs. Although Burgos was authorized to

settle for $500,000, Burgos told Evans that he could not get the defendants above $425,000-$450,000.  Later, Evans learned that in the mediation that the defendants offered Burgos $500,000 for Evans, but Burgos rejected it without communicating it to Evans nor did he have Evans' consent to reject that offer.

82.     Further, during Burgos' representation of Evans, Burgos was prepared to testify, if necessary, and argue that Evans was active and worked full-time through the date of the accident and the fusion.

83.     However, Evans terminated Burgos from his personal injury case on May 1, 2015, when Evans realized Burgos converted Evans practice.

84.     Accordingly, if Burgos successfully settled and mediated Evans personal injury case, Evans would have had monetary resources to put up a bigger legal fight against Burgos.

85.     In order to avoid Evans receiving a large sum of cash prior to his elimination, Burgos intentionally sabotaged the mediation of Evans personal injury case.

86.     Prior to the mediation, Burgos told Evans that Evans would be more of a distraction and hinder resolution and instructed Evans to stay home and remain by the phone to get a status update of how the mediation was going.  This was the first time in over 15 years that Burgos asked Evans to not participate in the mediation, knowing Evans handled 99.9% of the firms' cases that went to mediation.

87.     However, Burgos, McGregor and Daigre have now entered into a cooperative effort and aided counsel for the defendants, in the car accident case, to sabotage Evans' personal injury case by creating lies about Evans' injuries and work habits prior to the accident. While Burgos and McGregor represented Evans, they filed a Motion for Partial Summary

Judgment on Causation moving for a judgment that the accident caused Evans' herniation and subsequent need for a lumbar fusion.

88.     Although, Evans personal injury case is still pending since Burgos has cooperated with the defense counsel on the personal injury case, the $500,000 has been withdrawn and Evans has no idea, if anything, he might recover based upon all the allegations Burgos has made since 2012.

89.     Evans demands damages in an amount reasonable in the premises for the malpractice of Burgos and Burgos & Assoc.

90.     PLAINTIFFS DEMAND TRIAL BY JURY ON ALL ISSUES.

        **WHEREFORE**, Plaintiffs, demand judgment in their favor against the defendants as prayed for above and for any and all other just and equitable relief that this Court deems appropriate.

*Respectfully Submitted:*

**THE EVANS LAW CORPORATION**

*/s/ Robert B. Evans, III*
Robert B. Evans, III #23473
3445 N. Causeway Blvd., Suite 707
Metairie, Louisiana 70002
Telephone: (504) 304-3230
Facsimile: (504) 285-3545
robby@robertevanslaw.com
**Attorney for Plaintiffs**

*Certificate of Service*

        I hereby certify that a copy of the foregoing has this day been served upon all counsel of record by Electronic Means this 16th day of May 2017.

*/s/ Robert B. Evans, III*
**Robert B. Evans, III**